1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

10  ROBERT KELLY, ERYN LEARNED, AND KERRY WANO, on behalf of themselves and all others similarly situated,

NO.

11

**COMPLAINT—CLASS ACTION**

12          Plaintiff,

13  v.

**DEMAND FOR JURY TRIAL**

14  THE MCCLATCHY COMPANY, LLC

15          Defendant.

16

17          Robert Kelly, Eryn Learned, and Kerry Wano (together "Plaintiffs"), individually and on

18  behalf of all others similarly situated, bring this action to enforce the consumer-privacy

19  provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against

20  Defendant The McClatchy Company, LLC ("McClatchy" or "Defendant").

21                          **I.  NATURE OF ACTION**

22          1.      As the Supreme Court recently explained, "Americans passionately disagree

23  about many things. But they are largely united in their disdain for robocalls. The Federal

24  Government receives a staggering number of complaints about robocalls—3.7 million

25  complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly

26  30 years, the people's representatives in Congress have been fighting back. As relevant here,

27  the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      Plaintiffs bring this action to enforce the consumer-privacy provisions of the TCPA, alleging that McClatchy violated the TCPA in two ways: (i) McClatchy made telemarketing calls to Plaintiffs and other putative class members listed on the National Do Not Call Registry without their written consent; and (ii) McClatchy called Plaintiffs and proposed class members despite their "do not call" requests.

3.      These calls were made in the absence of an adequate "do not call" policy or training, as evidenced by repeated calls to Plaintiffs after specific requests that Defendant stop calling and by calls to individuals, including Plaintiffs, who have taken the affirmative step of registering their number on the National Do Not Call Registry.

4.      Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiffs bring this action on behalf of two proposed nationwide classes of other persons who received illegal telemarketing calls from, or on behalf of, Defendant.

5.      A class action is the best means of obtaining redress for Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## II.   JURISDICTION AND VENUE

6.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

7.      This Court has personal jurisdiction over McClatchy because it is registered with the State of Washington as a foreign limited liability company and maintains a registered agent in the State of Washington, it makes telemarketing calls into the State of Washington, as it did with Plaintiff Kelly, and because four of the 29 local newspapers owned and operated by McClatchy are based in Washington.

COMPLAINT—CLASS ACTION- 2
CASE NO.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, as the telemarketing calls at issue were made into this District, and throughout the United States.

### III.  PARTIES

1.      Plaintiff Robert Kelly resides in Shelton, Washington, within this District, as he did at all relevant times during the conduct alleged in this Complaint.

2.      Plaintiff Eryn Learned resides in Idaho, as she did at all relevant times during the conduct alleged in this Complaint.

3.      Plaintiff Kerry Wano resides in Missouri, as he did at all relevant times during the conduct alleged in this Complaint.

4.      Defendant, The McClatchy Company, LLC is a Delaware limited liability company with its principal place of business located at 2100 Q Street, Sacramento, California 95816. Defendant owns and publishes local newspapers in twenty-nine markets in fourteen different states, including Washington, California, Idaho, Kansas, Texas, Missouri, Illinois, Mississippi, Georgia, Florida, Kentucky, South Carolina, North Carolina, and Pennsylvania.

### IV.  TCPA BACKGROUND

5.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**A.      The TCPA requires entities to have sufficient policies in place to prevent unwanted calls before making telemarketing calls**

6.      The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

COMPLAINT—CLASS ACTION- 3
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

7.      The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

8.      Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

9.      These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

10.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

11.     This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

12.     These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

13.     Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

**B.      The TCPA prohibits calls to numbers on the National Do Not Call Registry.**

14.     The TCPA also prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

COMPLAINT—CLASS ACTION- 4
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

15.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**C.     Automated telemarketing is a growing problem.**

18.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman) (last visited June 3, 2021).

19.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc (last visited June 3, 2021).

20.     For example, according to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in March 2021 at a rate of 159.4 million per day. www.robocallindex.com (last visited June 2, 2021). In 2019, nearly 60 billion robocalls were made, and in 2020, over 45 billion robocalls were made. *See id.*

21.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, 232,000 complaints in

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

2018, 191,761 complaints in 2019, and 155,167 complaints in 2020. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited June 2, 2021).

## V.   FACTUAL ALLEGATIONS

**A.     Factual Allegations Regarding Defendant**

22.     Defendant McClatchy is a publishing company that operates 29 daily local newspapers in fourteen states. https://www.mcclatchy.com/our-impact/markets (last visited June 2, 2021).

23.     In the State of Washington, McClatchy owns and operates the following daily newspapers: The Olympian (Olympia, WA), The Bellingham Herald (Bellingham, WA), The News Tribune (Tacoma, WA), and the Tri-City Herald (Kennewick, WA). *Id.*

24.     In the State of California, McClatchy owns and operates the following daily newspapers: The Sacramento Bee (Sacramento, CA), The Modesto Bee (Modesto, CA), the Merced Sun-Star (Merced, CA), The Fresno Bee (Fresno, CA), and The Tribune (San Luis Obispo, CA). *Id.*

25.     In the State of Idaho, McClatchy owns and operates the following daily newspaper: The Idaho Statesman (Boise, ID). *Id.*

26.     In the State of Kansas, McClatchy owns and operates the following daily newspaper: The Wichita Eagle (Wichita, KS). *Id.*

27.     In the State of Texas, McClatchy owns and operates the following daily newspaper: Fort-Worth Star Telegram (Fort-Worth, TX). *Id.*

28.     In the State of Missouri, McClatchy owns and operates the following daily newspaper: The Kansas City Star (Kansas City, MO). *Id.*

29.     In the State of Illinois, McClatchy owns and operates the following daily newspaper: Belleville News-Democrat (Belleville, IL). *Id.*

30.     In the State of Mississippi, McClatchy owns and operates the following daily newspaper: The Sun Herald (Biloxi, MS). *Id.*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

31.     In the State of Georgia, McClatchy owns and operates the following daily newspapers: the Ledger-Enquirer (Columbus, GA) and The Telegraph (Macon, GA). *Id.*

32.     In the State of Florida, McClatchy owns and operates the following daily newspapers: The Bradenton Herald (Bradenton, FL) and the Miami Herald (Miami, FL). *Id.*

33.     In the State of Kentucky, McClatchy owns and operates the following daily newspaper: the Lexington Herald-Leader (Lexington, KY). *Id.*

34.     In the State of South Carolina, McClatchy owns and operates the following daily newspapers: The Island Packet (Hilton Head, SC), The Beaufort Gazette (Beaufort, SC), The Sun News (Myrtle Beach, SC), The State (Columbia, SC), and The Herald (Rock Hill, SC). *Id.*

35.     In the State of North Carolina, McClatchy owns and operates the following daily newspapers: The Charlotte Observer (Charlotte, NC), The Herald Sun (Durham, NC), and The News & Observer (Raleigh, NC). *Id.*

36.     In the State of Pennsylvania, McClatchy owns and operates the following daily newspaper: the Centre Daily Times (State College, PA). *Id.*

37.     One of McClatchy's strategies for soliciting customers' subscriptions to its local newspapers includes the use of telephone solicitation calls.

38.     Recipients of these telephone solicitation calls, including Plaintiffs, did not consent to receive such calls.

**B.     Factual Allegations Regarding Plaintiffs**

Calls to Plaintiff Robert Kelly

39.     Plaintiff Robert Kelly is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

40.     Mr. Kelly's telephone number, (XXX) XXX-3012, is listed on the National Do Not Call Registry, and has been since September 5, 2012.

41.     Mr. Kelly's telephone number, (XXX) XXX-3012, is a residential landline telephone number that is not used for business purposes.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

42.     In approximately December of 2018 Mr. Kelly purchased a subscription to The Olympian, a daily newspaper owned and operated by Defendant. That subscription could be terminated at any time by Mr. Kelly.

43.     In approximately April 2019, Mr. Kelly cancelled the subscription.

44.     However, The Olympian continued to be delivered to Mr. Kelly's home for approximately six more weeks, despite terminating the relationship and unequivocally cancelling the subscription effective immediately.

45.     Shortly after he cancelled the subscription to The Olympian in approximately April 2019, Mr. Kelly began to receive telemarketing calls from the Defendant to his telephone number (XXX) XXX-3012. At times, Mr. Kelly would receive calls two to three times per day offering to renew the cancelled subscription for a discounted price. These telemarketing calls continued until approximately September 2019.

46.     The calls annoyed Mr. Kelly and invaded his privacy.

47.     On multiple occasions, Mr. Kelly called The Olympian to complain about the ongoing telemarketing calls he was receiving.

48.     Defendant either does not have or does not utilize an internal Do Not Call list, as Mr. Kelly continued to receive calls from The Olympian and Defendant despite his requests that they stop calling him.

49.     The calls were telemarketing in purpose, designed to solicit Mr. Kelly to subscribe to The Olympian.

50.     Mr. Kelly was not interested in any further subscription and informed the callers of that.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Calls to Plaintiff Eryn Learned

51.     Plaintiff Eryn Learned is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

52.     Ms. Learned's telephone number, (XXX) XXX-3728, is listed on the National Do Not Call Registry, and has been since March 13, 2008.

53.     Ms. Learned's telephone number, (XXX) XXX-3728, is a personal cellular telephone number that is not used for business purposes.

54.     In December 2019, Ms. Learned signed up for a one-month promotional subscription to The Idaho Statesman, a daily newspaper owned and operated by Defendant. That subscription could be terminated at any time by Ms. Learned.

55.     In January 2020, Ms. Learned cancelled her promotional subscription and terminated her relationship with Defendant, informing The Defendant that she no longer wanted to receive The Idaho Statesman newspaper.

56.     However, despite terminating the relationship and unequivocally cancelling her subscription effective immediately, Ms. Learned continued to be billed by The Idaho Statesman.

57.     In February 2020, Ms. Learned contacted The Idaho Statesman and requested a refund for the unauthorized charges for her cancelled subscription. The requested refund was provided and her cancellation as of January 2020 was confirmed.

58.     However, after that February 2020 request, Ms. Learned began to receive telemarketing calls from Defendant to her telephone number (XXX) XXX-3728.

59.     The calls were telemarketing in purpose, designed to solicit Ms. Learned to subscribe to The Idaho Statesman.

60.     Ms. Learned was not interested in any further subscription and informed the callers of that.

61.     The calls annoyed Ms. Learned and invaded her privacy.

COMPLAINT—CLASS ACTION- 9
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

62.     Between February 2020 and approximately June 2020, Ms. Learned received approximately 25 calls and, on each occasion, asked that Defendant stop making telemarketing calls to her as she was not interested in a subscription to The Idaho Statesman.

63.     Defendant either does not have or does not utilize an internal Do Not Call list, as Ms. Learned continued to receive calls from the Defendant despite her requests that they stop calling her.

64.     Finally, in June 2020, Ms. Learned demanded to speak to a supervisor and again requested that the calls stop.

65.     Following that June 2020 request, Ms. Learned did not receive another telemarketing call from the Defendant until November 2020, when Ms. Learned received an additional telemarketing call promoting the newspaper's holiday issue and December coupons.

<u>Calls to Plaintiff Kerry Wano</u>

66.     Plaintiff Kerry Wano is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

67.     Mr. Wano's telephone number, (XXX) XXX-0448, is listed on the National Do Not Call Registry, and has been since July 4, 2003.

68.     Mr. Wano's telephone number, (XXX) XXX-0448, is a personal cellular telephone number that is not used for business purposes.

69.     In approximately December 2019, Mr. Wano signed up for a one-month promotional subscription to The Kansas City Star, a daily newspaper owned and operated by Defendant. That subscription could be terminated at any time by Mr. Wano.

70.     Shortly after signing up that one-month promotional subscription, Mr. Wano wanted to cancel that subscription, but was told by the Kansas City Star that he could not do so until after the one-month promotional period expired.

71.     In approximately January 2020, Mr. Wano cancelled his promotional subscription to The Kansas City Star and terminated his relationship with Defendant, informing Defendant that he no longer wanted to receive The Kansas City Star newspaper.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

72.     However, almost immediately after cancelling, Mr. Wano began to receive telemarketing calls from The Kansas City Star and Defendant to his telephone number (XXX) XXX-0448. These telemarketing calls continued for approximately eight months before stopping.

73.     The calls annoyed Mr. Wano and invaded his privacy.

74.     On at least 5 occasions, Mr. Wano asked that Defendant stop making telemarketing calls to him as he was not interested a subscription to The Kansas City Star and had unequivocally cancelled his subscription and terminated his relationship with Defendant.

75.     Defendant either does not have or does not utilize an internal Do Not Call list, as Mr. Wano continued to receive calls from The Kansas City Star and Defendant despite his requests that they stop calling him.

76.     The calls were telemarketing in purpose, designed to solicit Mr. Wano to subscribe to The Kansas City Star.

77.     Mr. Wano was not interested in any further subscription and informed the callers of that.

78.     Although the telemarketing calls to Mr. Wano finally ceased in approximately August 2020 after his many requests, he received an additional telemarketing call from the Defendant in February 2021.

<u>Additional Telemarketing Calls</u>

79.     Plaintiffs are not alone. Other individuals have complained about receiving telephone solicitation calls from Defendant and have left accompanying reviews online.

80.     For example, an individual that cancelled her subscription to Defendant's Sacramento Bee newspaper reported in May 2020 that she was "getting phone calls everyday from the Sacramento Bee" even after she cancelled and she asked Defendant to "please make them stop."

COMPLAINT—CLASS ACTION- 11
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1
2
3
4
5
6
7



8
9

https://www.facebook.com/sacramentobee/posts/10157669981131225 (last visited June 3,

2021).

10
11

81.    Another individual reported that he "continue[s] to receive harassing phone calls

from [Defendant's Kansas City Star newspaper] after I cancelled my subscription."

12
13
14
15
16
17
18
19
20

https://goo.gl/maps/9scSRa6fAAxDrDPK7 (last visited June 3, 2021).

21
22
23
24
25
26
27

COMPLAINT—CLASS ACTION- 12
CASE NO.

82.     People report that Defendant's calls continue to occur even after multiple requests to be removed from the call list.



https://twitter.com/rcv_sc/status/1283394154555486208 (last visited June ., 2021).



https://twitter.com/rhettysetgo/status/1242451100021784578 (last visited June 3, 2021).

83.     Plaintiffs and other individuals who received these calls suffered an invasion of privacy and were harassed by the conduct of Defendant.

### VI.  CLASS ACTION ALLEGATIONS

84.     As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of two National Classes of all other persons or entities similarly situated throughout the United States.

85.     The Classes of persons that Plaintiffs propose to represent are defined as follows (collectively referred to as the "Classes"):

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant, (3) within a 12-month period, (4) who had previously asked for the calls to stop or had not had a subscription with the Defendant for at least 18 months or who had not inquired about Defendant's services within the 3 months preceding the call (5) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Internal DNC Class**: All persons in the United States to whom : (a) Defendant (or an agent acting on behalf of Defendant) placed (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendant at the time of the call, (4) who had previously asked for the calls to stop and (5) at any time in the period that begins four years before the date of filing this Complaint to trial.

86.     Excluded from the Classes are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

87.     The Classes, as defined above, are identifiable through telephone records and telephone number databases.

88.     The potential members of the Classes number at least in the thousands.

89.     Individual joinder of these persons is impracticable.

90.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

91.     Plaintiffs are all members of each of the Classes and will fairly and adequately represent and protect the interests of the Classes as they have no interests that conflict with any of the Class members.

92.     Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

93.     This class action complaint seeks injunctive relief and money damages.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

94.     There are numerous questions of law and fact common to Plaintiffs and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

      a.     whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

      b.     whether Defendant made calls to Plaintiffs and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

      c.     whether Defendant's calls to Plaintiffs and members of the National Do Not Call Registry Class constitute a violation of the TCPA;

      d.     whether Defendant maintained a written "do not call" policy;

      e.     whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

      f.     whether Defendant recorded or honored "do not call" requests of Plaintiffs and members of the Internal DNC Class;

      g.     whether Defendant's conduct regarding its "do not call" policies constitute a violation of the TCPA; and

      h.     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

95.     Plaintiffs' claims are typical of the claims of the Classes.

96.     Plaintiffs' claims, like the claims of Classes, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

97.     Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Classes, they will fairly and adequately protect the interests of the Classes, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

98.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

99.     A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendant to comply with the TCPA. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

100.    Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis. Moreover, on information and belief, Plaintiffs allege that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

101.    Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiffs and the National Do Not Call Registry Class)**

102.    Plaintiffs repeat their prior allegations of this Complaint and incorporate them by reference herein.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

103.    The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

104.    Defendant's violations were negligent, willful, or knowing.

105.    As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

106.    Plaintiffs and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227**
**(On Behalf of Plaintiffs and the Internal DNC Class)**

107.    Plaintiffs repeat the prior allegations of this Complaint and incorporate them by reference herein.

108.    Defendant placed numerous calls for telemarketing purposes to Plaintiffs and Internal DNC Class Members' telephone numbers.

109.    Defendant did so despite not having a written policy pertaining to "do not call" requests.

110.    Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

COMPLAINT—CLASS ACTION- 17
CASE NO.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

111.    Defendant did so despite not recording or honoring "do not call" requests.

112.    Defendant placed two or more telephone calls to Plaintiffs and Internal DNC Class members in a 12-month period.

113.    Plaintiffs and Internal DNC Class members are entitled to an award of up to $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

114.    Plaintiffs and Internal DNC Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

115.    Plaintiffs and the members of the Internal DNC Class are also entitled to and do seek injunctive relief requiring Defendant to enact a written policy pertaining to "do not call" requests, train its personnel on the existence and use of the internal "do not call list," and record and honor "do not call" requests.

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

A.    Certification of the proposed Classes;

B.    Appointment of Plaintiffs as representatives of the Classes;

C.    Appointment of the undersigned counsel as counsel for the Classes;

D.    A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E.    An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance.

F.    An order enjoining Defendant to comply with the internal "do not call" policies of the TCPA;

G.    An award to Plaintiffs and the Classes of damages, as allowed by law; and

H.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## VIII.  DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all claims of the Complaint so triable.

RESPECTFULLY SUBMITTED AND DATED this 29th day of June, 2021.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com

By: /s/ Jennifer Rust Murray, WSBA #36983
Jennifer Rust Murray, WSBA #36983
Email: jmurray@terrellmarshall.com

By: /s/ Adrienne D. McEntee, WSBA #34061
Adrienne D. McEntee, WSBA #34061
Email: amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Samuel J. Strauss, WSBA #46971
Email: sam@turkestrauss.com
TURKE & STRAUSS LLP
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

*Attorneys for Plaintiff*

COMPLAINT—CLASS ACTION- 19
CASE NO.